JOHN L. BLACK, JR. (#0349)
Attorney for Plaintiff
311 South State Street #380
Salt Lake City, Utah 84101
Telephone: (801) 363-3550
Facsimile: (801) 363-8438

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LISA C. PETERSON, <br><br> Plaintiff, <br><br> -vs- <br><br> SCIS AIR SECURITY CORP., a Delaware Corporation, and LSG SKY CHEFS, INC., a Delaware Corporation, <br><br> Defendant. | COMPLAINT <br> (Jury Demanded) <br><br><br> Case No.: <br><br><br> Judge: |

COMES NOW, Plaintiff Lisa C. Peterson, by and through her attorney, John L. Black, Jr., and complains of Defendants and alleges as follows:

## INTRODUCTION

1. This is a case of severe and pervasive sexual harassment, retaliation, and related pendent claims arising out of Plaintiff's employment for Defendant SCIS Air Security Corp. at the Salt Lake International Airport in Salt Lake County, State of Utah. Plaintiff, since shortly after she was hired on March 31, 2012, has been victim of severe and pervasive sexual harassment by at least 12 different employees of SCIS's exclusive client, LSG Sky Chefs, Inc.

2. This harassment included a full range of offensive behavior including vulgar

sexual expressions, sexual gestures, sexual and criminal touching of her private parts, as well as physical assaults by vindictive and retaliatory employees, resulting in physical injuries. These ultimately lead her to file criminal charges against the perpetrators.

3. Plaintiff is employed by SCIS Air Security Corp. ("SCIS") as a Security Ramp Coordinator, whose primary job it is to search and inspect airline catering carts and vehicles owned and operated by a related corporation LSG Sky Chefs Inc. ("Sky Chefs"). Both corporations are within the multi-national LSG Group, which is a collection of companies under LSG Lufthansa Service Holding Company which operates worldwide and employs 32,000 employees.

4. Plaintiff complained numerous times to her supervisors at SCIS and also to supervisors at Sky Chefs, but neither company did anything to put an end to the sexually hostile work environment, or otherwise discipline or sanction the sexual harassers.

5. Despite her numerous complaints, the sexual abuse and harassment continued unabated. SCIS has failed and refused to eliminate the sexual hostile work environment, and Sky Chefs has failed and refused to discipline and control its employees. This has all lead to severe physical pain and suffering and emotional distress for which Ms. Peterson has received medical treatment and mental health counseling.

**PARTIES**

6. Plaintiff Lisa C. Peterson is a 41-year old female who is a citizen and resident of the United States and North Salt Lake City, Salt Lake County, Utah.

7. Defendant SCIS Air Security Corp. is a Delaware Corporation with corporate headquarters in Arlington, Texas which is part of a collection of companies under LSG Lufthansa

Service Holding Corp. which operates worldwide. The corporate Treasurer of SCIS is Thomas J. Lee and its Director is Jochen Mueller.

8. SCIS performs security for only one exclusive company, LSG Sky Chefs, Inc. who prepares the in-flight meals for various airlines, including Delta.

9. Defendant Sky Chefs, Inc. is a Delaware Corporation and has its headquarters in Irving, Texas. Its President is Jochen Mueller and its Treasurer is Thomas J. Lee. According to Sky Chefs' website, it employs 7,100 employees and prepares 578 million meals per year and earns $270 million dollars per year.

10. At all times relevant herein, Defendants SCIS and Sky Chefs, Inc. both operated out of the Salt Lake International Airport in Salt Lake City, Salt Lake County, Utah.

11. For purposes of this action pursuant to 42 USC §2000e(b), SCIS employed more than 15 persons, including the Plaintiff, and is an "Employer" within the meaning of the Civil Rights Act.

## JURISDICTION AND VENUE

12. This action is brought pursuant to Title VII under the Civil Rights Act of 1964, 42 USC §2000e, *et. seq.* as amended by the Civil Rights Act of 1991. This court has subject matter jurisdiction over this action pursuant to 28 USC §1331, and 42 USC §2000e-5(f)(3).

13. Venue lies properly in this district as all Defendants reside within this district, and pursuant to 42 USC §2000e-59(f)(3).

14. Supplemental jurisdiction over the pendent state claims is proper in this Court as the violation of Federal law alleged herein is substantial and the supplemental claims all derive from a common nucleus of operative facts.

15. On or about August 26, 2015 Plaintiff timely filed charges of Discrimination with the Anti-Discrimination Division of the Utah State Labor Commission and with the Equal Employment Opportunity Commission. Those agencies have terminated any further proceedings relating to Plaintiff's Charges of Discrimination, and pursuant to 42 USC §2000e-5, issued to her a Notice of Right to Sue Letter. Less than 90 days have passed since such Right to Sue Letter was received by her. Plaintiff has thus met all administrative pre-requisites to bringing this action.

## STATEMENT OF FACTS

16. Plaintiff was hired on March 13, 2012 by Defendant SCIS Air Security Corp. for the position of Security Ramp Coordinator at Defendant's facilities at the Salt Lake International Airport.

17. Shortly after Plaintiff started work, certain employees for Defendant Sky Chefs started staring at her focusing on her private parts. They made suggestive sexual comments and make inappropriate statements about her appearance,e and ask inappropriate questions about her marital status.

18. Within a few months, Sky Chef's Safety Manager, Jose Careno, was telling her, "I want to fuck you." Jose also held her tightly in a bear hug face to face and forced a kiss upon her.

19. Also within that first year of employment Hector Salazar, Sky Chef's Night Manager in Dispatch, began asking her for sex, grabbing her buttocks and forcing a kiss upon her, asking her to look at his boner, and telling her he wanted to fuck her.

20. Plaintiff reported this sexual harassment to her manager Sylvia Williams, but

4

nothing was done and the sexual harassing behavior continued unabated, and continued into her second year of employment, 2013.

21. When her verbal complaints failed to stop the sexual harassment, on 10/23/2013 Plaintiff filed a detailed written report, "Complaint Resolution Request." She reported that Sky Chef's employee known as "Chola" was saying "Disgusting things about my genitalia. …He grabs my vagina and breasts. I have told him to stop and he doesn't so now I have to make an official complaint."

22. Despite this shocking report of criminal sexual abuse, neither SCIS nor Sky Chefs took any action to put an end to this behavior and it continued.

23. In late 2013 or early 2014 Sky Chef's Hector Salazar, Night Manager in Dispatch, was making more requests for sex, and forcing hugs and kisses upon Plaintiff.

24. In 2014, Sky Chefs employee "Theodoro" repeatedly touched Plaintiff inappropriately, including touching her breast, prompting her to wear a sign that stated, "Don't touch me." Plaintiff explained to her Supervisor Ms. Williams why she was wearing it, that she was tired of being touched, yet Ms Williams simply told her to take it off.

25. "Andy", a Manager for Sky Chef enjoyed pulling Plaintiff's apron strings that lay across her buttocks, in order to cause her apron to fall off her hips.

26. This sexually harassing behavior was pervasive and widespread throughout SCIS as many other female employees were also being sexually harassed, prompting another employee to wear the same sign, "Don't touch me." Ms Williams instructed her to stop wearing the sign as well.

27. When Plaintiff's verbal complaints were disregarded and ignored, Plaintiff wrote

and delivered to Defendants a long complaint about Sky Chefs employee "A.J." on 09/09/2014.

28. Plaintiff explained that although their relationship started off on a friendly note, soon A.J. started demanding a sexual relationship with Plaintiff, which she rebuffed.

29. A.J. started to tell her that she couldn't talk to any other men; he then slapped her to "Show her how serious he was."

30. Plaintiff told A.J. she didn't ever want to talk to him again, but he would not leave her alone.

31. A.J. retaliated against her by calling her "bitch" or "whore", getting physical with her on the job, following her to her car after her shif,t and threatening her that if she were to talk to any man, he would kill the man and kill her as well.

32. Plaintiff pleaded with SCIS, that A.J. scared her, that he kept asking her for kisses and sex, poking at her, putting his hand on her neck, and ultimately physically assaulting her by punching her hard on her arm, producing a welt.

33. This incident was witnessed by another Sky Chefs employee "Daniel" who told him to "Not to hit girls" to which A.J. responded, "She is a woman."

34. Plaintiff pleaded with SCIS and Sky Chefs, "I don't feel safe around A.J. at all." Despite her pleas for help, and requests for SCIS to eliminate the sexually hostile work environment, following death threats from A.J., neither SCIS nor Sky Chefs did anything to stop A.J. or to sanction him for his criminal behavior.

35. This vile pervasive sexually hostile work environment continued unabated not just as to Plaintiff, but to several other female employees of SCIS whose complaints were also ignored, just as Plaintiff's had been.

36. Around Christmas time in 2014, Sky Chefs employee "Villiami" told Plaintiff he wanted to "Fuck her" and "Eat her pussy." He also touched her breasts. Villiami also started stalking her, filming her with his cell phone against her wishes and without her knowledge.

37. Plaintiff reported all this to Villiami's manager at Sky Chefs, but once again, it was to no avail and the sexual harassment continued.

38. Ultimately on 05/07/2015, Sky Chefs employee "Chola", who had grabbed her crotch and tried to force a kiss upon her in 2014, once against stroked her breast. When she pushed his hand away, he grabbed her vagina. She pushed him away again then he grabbed her arm and forcibly restrained her and wouldn't let her go.

39. Plaintiff reported this to Assistant manager Gene Baumgartner, to which he exclaimed, "What, again!" She also reported this to the Salt Lake Airport Police, with whom she filed a formal complaint.

40. Plaintiff's complaints against the Sky Chef's employees made her a pariah within the workplace, and she became the victim of scorn, disgust, hatred and retaliation.

41. An example of that hatred occurred on 05/21/2015. While performing her duties, she approached a set of swinging doors. The doors had windows in them and Sky Chef's employee Jose Careno, the Safety Manager, who was mentioned in paragraph 18 above, approached from the other side. Their eyes met through the window glass. Jose saw his opportunity, so he pushed and kicked the swinging doors forcibly into Plaintiff plowing through her without saying a word. He just kept walking. This resulted in physical injury to Plaintiff's left knee, right shin and ankle, right wrist, right shoulder for which she filed a Workers' Compensation claim. This incident was witnessed by a fellow SCIS employee who stated that

she believed that this was entirely intentional on Jose's part. Plaintiff filed a report to SCIS, and reported this to her supervisor Sylvia Williams, as well as to the Salt Lake Airport Police.

42. Despite this incredible amount of evidence, much of which would have been recorded on security cameras throughout the plant which could have, and should have, been reviewed by Defendants, no action was ever taken against Jose or Chola by Sky Chefs, and they continued to taunt, harass, annoy and oppose Plaintiff every chance they got.

43. SCIS has instead labeled Plaintiff as the troublemaker, and the source of the problem. Sky Chef's Regional Manager threatened, If there were any more "problems with Lisa, she would be banned from the building. Sylvia Williams threatened her, stating that "Utah is a right to work state so both of you could be fired." SCIS also ordered not speak to any Sky Chef's employees, under threat of termination. .

44. Sylvia Williams has opposed, on occasion, Plaintiff's reasonable requests for medical leave for the emotional distress she has experienced as a result of the sexual harassment

45. When it became clear that SCIS was not going to protect her, Plaintiff sought the protection of the law by filing a charge of discrimination with the Utah Anti-Discrimination and Labor Division, and the EEOC on August 26, 2015.

### FIRST CAUSE OF ACTION

### SEXUALLY HOSTILE WORK ENVIRONMENT

46. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in paragraphs 1 thru 45 above.

47. The actions, behaviors and the conduct of Defendant SCIS, through its owners, managers, supervisory employees and employees created a sexually hostile work environment,

8

which negatively affected the terms and conditions of Plaintiff's employment. The sexual harassment was allowed to continue unabated despite Plaintiff's frequent complaints to management, and in spite of the complaints of other employees as well.

48. SCIS knew of the existence of the sexually hostile work environment due to Plaintiff's complaints, and the complaints of other employees.

49. Defendant SCIS knew, or should have known, of the existence of the sexually hostile work environment because of the widespread, pervasive and long standing nature of the sexual harassment.

50. Adverse employment action was taken against Plaintiff by SCIS by isolating her from other employees; by not allowing her to talk to fellow workers; assigning her to less desirable shifts, by threatening to fire her, and by failing to promptly eliminate the sexual hostile work environment.

51. The above described conduct created a sexually hostile work environment which violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as well as the Utah Anti-Discrimination Act of 1965, as amended.

52. As a direct and proximate result of the aforesaid violations of Plaintiff's rights, Plaintiff sustained consequential damages including extreme emotional distress and physical pain and suffering.

## SECOND CAUSE OF ACTION

### RETALIATION

53. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in paragraphs 1 thru 52 above.

54. When Plaintiff complained about the above described sexual harassment to Defendant SCIS through its supervisory employees, including Sylvia Williams and Gene Baumgartner, Defendant retaliated against her by treating her as if she was the guilty party, by isolating her; by reassigning her to less desirable shifts; by forbidding her to talk to any of her fellow employees and by treating her with scorn, and being dismissive of her complaints. Sky Chef's employees taunted and ridiculed her. They said she deserved to be slapped by A.J. They told her they hated her. Sky Chef's GM was mad at her for getting Corporate involved. HR claimed, they had, "A lot of problems with you." Jose Careno and A.J. retaliated against her with physical violence resulting in injury.

55. As a direct and proximate result of the aforesaid retaliation, Defendant SCIS violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as well as the Utah Anti-Discrimination Act of 1965, as amended, causing Plaintiff to sustain consequential damages including severe emotional distress and physical pain and suffering.

## THIRD CAUSE OF ACTION

### NEGLIGENT SUPERVISION AND RETENTION BY LSG SKY CHEFS, INC.

56. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in paragraphs 1 thru 55 above.

57. Defendant LSG Sky Chefs, Inc. owed a duty of due care to Plaintiff to prevent its managers, agents, servants and employees from sexually harassing, discriminating, physically assaulting and sexually assaulting the Plaintiff.

58. Defendant LSG Sky Chefs, Inc. negligently hired Jose, Hector, Theodoro, Chola, Villiami, Qasam, Andy, Nick, Mohmmad, Humberto, A.J. and others, and it failed to exercise control or supervision over them, and failed to timely put an end to the sexually hostile work environment that they were causing the Plaintiff and other female employees of SCIS, nor did it terminate their employment when it knew, or should have known, of the severe sexual harassment, physical abuse, sexual abuse and sexual assaults they were causing to Plaintiff and others.

59. Defendant Sky Chefs failed to take prompt and appropriate corrective action with respect to Jose, Hector, Theodoro, Chola, Villiami, Qasam, Andy, Nick, Mohmmad, Humberto, A.J. and others, when it knew, or should have known, the risk that these employees would continue to sexually harass Plaintiff and other employees with their vulgar sex talk, fondling, groping, unsolicited kissing, and grabbing of Plaintiff's breasts and vagina.

60. As a direct and proximate result of the foregoing wrongdoing, negligence and reckless conduct, Plaintiff has suffered consequential damages including severe emotional distress, and physical pain and suffering all to Plaintiff's general damage.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL**
**DISTRESS AT LSG SKY CHEFS, INC.**

61. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in paragraphs 1 thru 60 above.

62. Sky Chefs employees Jose, Hector, Theodoro, Chola, Villiami, Qasam, Andy, Nick, Mohmmad, Humberto, A.J. and others, was outrageous, intolerable, and generally offended accepted standards of decency and morality.

63. Sky Chefs employees' conduct and its retaliation against Plaintiff for repeatedly complaining about its employees and allowing it to continue year after year unabated demonstrated that its refusal to act was intended to cause, or was perpetrated in reckless disregard of the likelihood of causing Plaintiff severe emotional distress.

64. Sky Chefs is liable for the tortious acts of its managerial employees, Jose Careno, Hector Salazar, and "Andy" who were acting within the course and scope of their employment, and utilizing their authority as managers for Sky Chefs, to aid them in intimidating, sexually harassing, and intentionally inflicting emotional distress upon Plaintiff.

65. As a direct and proximate result of Sky Chefs unforgivable and conduct and behavior, Plaintiff suffered and continues to suffer from severe emotional distress.

## FIFTH CAUSE OF ACTION

### SEXUAL BATTERY BY DEFENDANT
### LSG SKY CHEFS, INC.

66. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in paragraphs 1 thru 65 above.

67. Plaintiff was physically assaulted and was offensively touched, against her will, by Sky Chefs employees Jose, Hector, Theodoro, Chola, Villiami, Humberto and A.J.

68. Plaintiff repeatedly reported this conduct to both SCIS and Sky Chefs, but Sky Chefs failed and refused to put a stop to this and end the physical torment and torture of the Plaintiff, which it clearly had the power to do.

69. Defendant Sky Chefs conduct in failing to act when it knew that such failure would result in the continuation of the same offensive behavior, including battery and sexual battery, ratified and endorsed this harmful and offensive contact to Plaintiff's person which constituted battery upon her by Sky Chefs.

70. As a direct and proximate result of Defendant Sky Chefs conduct, Plaintiff suffered and continues to suffer from severe emotional distress and physical pain and suffering.

## SIXTH CAUSE OF ACTION

### PUNITIVE DAMAGES

71. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in paragraphs 1 thru 70 above.

71. Defendants SCIS' violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, was malicious and done with reckless indifference of the federally protected rights of Plaintiff for which Plaintiff is entitled to punitive damages pursuant to 42 USC §1981(a)(b)(1).

72. The conduct of both Defendant SCIS and Sky Chefs, and their agents, was willful and malicious and/or manifested a knowing and reckless indifference toward, and disregard of, the rights of Plaintiff.

73. The wrongful acts alleged herein were committed or specifically authorized by Sky Chefs and SCIS and/or its managerial agents.

74. The wrongful acts alleged herein were committed by unfit employees and managers of Defendants SCIS and Sky Chefs, who were recklessly employed, supervised or retained by Defendants SCIS and Sky Chefs, thus Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that Judgment be entered against Defendants both jointly and severally, as follows:

1. For actual damages for lost income, benefits, and expenses, together with pre-judgment interest thereon, in an amount to be proven at trial.

2. For general and compensatory damages against SCIS in the amount of $300,000.

3. For general and compensatory damages against LSG Sky Chefs, Inc. in the amount of $300,000.

4. For punitive damages against each Defendant in an amount to be proven at trial.

5. For reasonable attorney's fees and costs pursuant to 42 USC §2000(e)-5(k).

6. For such other and further relief as is just, proper, and equitable in these circumstance.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands pursuant to 42 USC §1981(a) that all issues herein be tried to a jury.

DATED this 29th day of July, 2016.

/s/ John L. Black, Jr._____
JOHN L. BLACK, JR.
Attorney for Plaintiff