THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| LISA C. PETERSON, | ) | Case No. 2:16-cv-849-DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| SCIS AIR SECURITY CORP., LSG SKY CHEFS, INC., | ) ) | |
| Defendants. | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Plaintiff Lisa C. Peterson is a former employee of Defendant SCIS Air Security Corporation ("SCIS") where she worked as a Security Ramp Coordinator. SCIS provides security services for Defendant LSG Sky Chefs, Inc. ("Sky Chefs"), who in turn provides in-flight meals for various airlines. Both Defendants operate out of Salt Lake International Airport.

Ms. Peterson's alleges that she was subjected to incidents of sexual harassment from 2012 through the end of her employment in October 2016, primarily by employees of Sky Chefs. She asserts that SCIS and Sky Chefs did not adequately address the harassment when it was brought to their attention, and that SCIS retaliated against her. In her Supplemental Amended Complaint[1] ('SAC') Ms. Peterson claims hostile work environment sex discrimination, retaliation, and constructive discharge under Title VII of

---

[1] Ms. Peterson filed an Amended Complaint on July 13, 2017, followed by a Supplemental Amended Complaint on October 24, 2017.

the Civil Rights Act of 1964 against SCIS. And against Sky Chefs she claims negligent employment. She seeks "actual damages including lost income, future lost income, benefits, and expenses, together with pre-judgment interest thereon, in an amount to be proven at trial", as well as general and compensatory damages of $600,000 total ($300,000 against each defendant) along with punitive damages in an amount to be proven at trial, and reasonable attorney's fees and costs. ECF No. 38 at p. 18

Sky Chefs move for summary judgment on the SAC. Defendant SCIS joins in the motion. They urge that Ms. Peterson is judicially estopped from pursuing claims about which she has provided information to a bankruptcy court that is inconsistent with her claims in her lawsuit pending before this Court

## II. SUMMARY JUDGEMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[2] *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

---

[2]Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242.

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. 242.

### III. DISCUSSION

A. Facts[3]

1. claims against defendants

Ms. Peterson was hired by SCIS on March 13, 2012. She alleges that soon thereafter she was sexually harassed by Sky Chefs' employees, and that the harassment continued through 2015. She contends that her claims of harassment were not appropriately handled by either SCIS or Sky Chefs. Ms. Peterson filed a charge of discrimination with the Utah Anti-Discrimination and labor Division and the EEOC on August 26. 2015. And on August 1, 2016, she filed her original complaint in this case. Ms. Peterson's employment ended October 4, 2016.

On March 9, 2017, pursuant to Sky Chefs' motion to dismiss, the claims against it were dismissed in full. All but Ms. Peterson's negligent employment claim were dismissed with prejudice. Ms. Peterson re-pled that negligent employment claim against Sky Chefs in the SAC. The SAC also includes claims against Defendant SCIS for hostile work environment, retaliation, and constructive discharge under Title VII of the Civil Rights Act.

---

[3]The Court agrees with Defendants that because Ms. Peterson has not disputed, with citations to evidence of record, any of their undisputed material facts, those facts must be accepted as true for purposes of this motion. *See* Reply, discussion at pp.2-5.

As noted, Ms. Peterson seeks "actual damages related to lost income, future lost income, benefits and expenses, together with pre-judgment interest thereon, in an amount to be proven at trial", as well as general and compensatory damages of $600,000 total ($300,000 against each defendant) along with punitive damages in an amount to be proven at trial, and reasonable attorney's fees and costs. ECF No. 38 at p. 18

### 2. bankruptcy filing

On December 27, 2016, over four months after filing this litigation, Ms. Peterson and her husband, represented by counsel, filed a joint Voluntary Petition for Chapter 13 Bankruptcy. A Statement of Financial Affairs and Schedules were filed with the bankruptcy court, including a "Schedule A/B: Property" that required Ms. Peterson and her husband to list all assets, along with the value of each asset, including any claims against third parties. Ms. Peterson disclosed that she had a personal injury claim for sexual harassment. She listed the value of the claim as $0.00. Ms. Peterson also filed a Schedule C for property claimed as exempt, on which she claimed an exemption from bankruptcy for the personal injury claim under Utah Code Ann. § 78B-5-505(1)(a)(x). The value of the claim was listed as $0.00. As part of her Statement of Financial Affairs, Ms. Peterson declared under penalty of perjury that she had read the summary and schedules filed and that they were true and correct.

On February 8, 2017, the Chapter 13 Trustee objected to the debtors' claimed exemption for the Personal Injury Claim "to the extent that it exempts non-compensatory and proceeds not as a result of bodily injury" which are outside of the statute relied on by debtors. ECF No. 54-3 at p.2. In response, Ms. Peterson and her husband filed amended schedules dropping any claim for exemption from bankruptcy for her personal injury claim,

but continuing to identify this lawsuit as a personal injury claim with a value of $0.00. The Trustee withdrew his objections and the Bankruptcy Court issued an order confirming Debtors' Chapter 13 Plan on April 27, 2017. ECF No. 54-6. The Plan requires Debtors to make 36 monthly payments of $150 to the Trustee and to also pay into the plan tax refunds that exceed $1000 in the aggregate. *Id*. pp. 2-3.

### B. Judicial Estoppel

"The purpose of judicial estoppel 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.... [and] to prevent improper use of judicial machinery.'" *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). It "is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750 (internal quotation marks omitted).

Three nonexclusive factors typically are considered in determining whether judicial estoppel applies to a party.

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (internal quotation marks and citations omitted). Inadvertence or mistake may counsel against application of judicial estoppel when "the debtor either lacks knowledge of the undisclosed claims or has

5

no motive for their concealment." *Id.* at 1157 (internal quotation marks omitted). However, "[w]here a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at time *sub silentio*, infer deliberate manipulation." *Id.* Pendent state law claims are analyzed in the context of federal principles. *Id.* at 1156.

### 1. clearly inconsistent position

The Court agrees with Defendants that Ms. Peterson's representation to the bankruptcy court regarding the value of her claims against Defendants is clearly inconsistent with her position in this litigation. Here she seeks at least $600,000, plus additional monetary damages. However, in her bankruptcy proceedings she identified this lawsuit as valueless. *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (plaintiffs take a clearly inconsistent position not only by failing to list a claim in bankruptcy proceedings, but also when they provide a value for the claim "far less than they had estimated it in the district court proceedings"); *see also Bone v. Taco Bell of Am, LLC*, 956 F. Supp. 2d 872, 883 (W.D. Tenn. 2013) (finding clearly inconsistent position for purposes of judicial estoppel where plaintiff did not conceal the existence of the claim, but her assertion that the claim was valueless directly conflicted with her lawsuit claim for $500,000).

Ms. Peterson's position that her bankruptcy filings were not clearly inconsistent because the exact value of her claim was not ascertainable when she filed her original complaint is rejected. *See Queen* 734 F.3d at 1090 (citation omitted) ("[plaintiff] misses the point ... the court must consider whether 'a party's subsequent position...[is] clearly inconsistent with its former position.' By providing a significantly lower estimated value to

the bankruptcy court ... while their position in the district court placed a much higher value on the lawsuit ... the [plaintiffs/debtors] took a clearly inconsistent position"). It is undisputed that Ms. Peterson, under penalty of perjury, attached a value of $0.00 to her lawsuit in her bankruptcy filings, while her original Complaint in this Court asked for general and compensatory damages against Defendants in the amount of $300,000 each.

Likewise, Ms. Peterson's position that she accurately stated her claims to be valueless because at the time she filed for bankruptcy her claims against Sky Chefs had been dismissed is rejected. As Defendants note, Ms. Peterson misstates the record. She filed her original schedules on December 27, 2016, several months after commencing this litigation. She then submitted amended bankruptcy schedules on March 5, 2017. On both dates, Ms. Peterson had active claims against Sky Chefs. And in any event, her claims against SCIS have remained pending without interruption.

### 2. persuading court to adopt clearly inconsistent position

The undisputed facts support the conclusion that Ms. Peterson succeeded in convincing the bankruptcy court to accept her position that this lawsuit had no value.[4] That position is clearly inconsistent with the position adopted by Ms. Peterson before this Court. The bankruptcy court confirmed the Petersons' Plan in April 2017. While the Plan provides for 36 monthly payments of $150 each, it does not provide for any payment to accrue from Ms. Peterson's claims brought in this litigation. The bankruptcy court's confirmation of the Plan based upon Ms. Peterson's inconsistent position is enough to satisfy the second

---

[4] Ms. Peterson's focus on the exempt status of her claims is misplaced. Rather, as noted by Defendants, the focus of their Motion is whether she persuaded the bankruptcy court to accept her position that her claims were valueless.

factor for application of judicial estoppel. *See Autos, Inc.* v. *Gowin*, 244 F. Appx. 885, 891 (10th Cir. 2007) ("The second element of judicial estoppel is also met [because the debtor] convinced the bankruptcy court to confirm her Chapter 13 plan without disclosing her claims against Autos.... By failing to disclose her claims as an asset on her schedules, [debtor] actively deceived her creditors and misled the bankruptcy court about [her] ...estate.").

### 3. party would gain unfair advantage if not estopped

The Court also agrees with Defendants that by assigning this lawsuit no value in her bankruptcy proceeding, Ms. Peterson gained an unfair advantage. "[G]iven that Peterson's total liabilities were approximately $25,000.00, an astute creditor may have objected to the nominal monthly payments set forth in the Chapter 13 Plan ... if it had known that Peterson had an asset that she valued as worth at least 24 times the value of her liabilities." ECF No 53 at 16. It is undisputed that Ms. Peterson and her husband's Plan was confirmed by the Bankruptcy court based on filings that greatly misrepresented the value she assigned to her lawsuit pending before this Court. *See Pfeifer v. Federal Exp. Corp.*, No. 09-cv-1248-EFM, 2014 WL 1246737, at *7 (D. Kan. March 26, 2014) (quoting *Autos, Inc. v. Gowin*, 330 B.R. 788, 796 (D. Kan. 2005), *aff'd in part*, *rev'd in part on other grounds*, 244 Fed Appx. 885 (10th Cir. 2007)) ("'[s]ufficient detriment is shown here because the omitted disclosures would have assisted the judge in making fully informed decisions about the bankruptcy plan and would have enabled creditors who relied upon the schedules, to determine the appropriate course of action'"); *see also Van Horn v. Martin*, 812 F. 3d 1180, 1183 (8th Cir. 2016) (affirming judicial estoppel where plaintiff/debtor "could have received an unfair advantage because her trustee could have asked the bankruptcy court

to order her to make any proceeds from a potential settlement available to her unsecured creditors").

And contrary to Ms. Peterson's argument, the Plan does not require the bankruptcy court to approve any settlement, nor does it provide for any proceeds form this litigation to go to her creditors. "Once a debtor has succeeded in obtaining a confirmation plan, all property of the estate is re-vested in the debtor '[e]xcept as otherwise provided in the plan or the order confirming the plan." *Pfeifer*, 2014 WL 1246737, at *6 (quoting 11 U.S.C. § 1327(b)). It is undisputed that the Bankruptcy Plan makes no provision for any proceeds from this lawsuit. Even if Ms. Peterson were willing to amend her Plan, permitting such a course of action "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." *Eastman*, 493 F. 3d at 1160 (internal quotation marks and citation omitted).

## IV. CONCLUSION

For the reasons stated, as well as generally for the reasons set forth by Defendants in their pleadings, Sky Chefs' Motion for Summary Judgment (ECF No. 53), in which SCIS joins (ECF No. 55), is granted and this case is dismissed with prejudice as to both Defendants on the basis of judicial estoppel.

IT IS SO ORDERED.

DATED this 6th day of July, 2018.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT